**I.A.M. NATIONAL PENSION FUND,
BENEFIT PLAN A, et al.,
Plaintiffs,**

v.

**ALLIED CORPORATION, Defendant.**

**ALLIED CORPORATION, Plaintiff,**

v.

**I.A.M. NATIONAL PENSION FUND,
BENEFIT PLAN A, et al.,
Defendants.**

**Civ. A. Nos. 82–1624, 84–1609.**

United States District Court,
District of Columbia.

Oct. 31, 1984.

See also 97 F.R.D. 34.

Robert T. Osgood, Joseph Martocci, Denis F. Gordon and David M. Ermer, Washington, D.C., for I.A.M. Nat. Pension Fund, petitioner.

A. Neal Barkus and Mary Ann Geeker Hunton & Williams, Washington, D.C., for Allied Corp.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

The I.A.M. National Pension Fund Benefit Plan A (the Fund) filed Civil Action 82–1624 in June 1982 in order to collect a withdrawal liability imposed by the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1381 *et seq.*, from the Allied Chemical Corporation (Allied). Ultimately, the Court ordered the parties to submit "all factual and statutory disputes to arbitration." *See* Civil Action No. 82–1624, Order filed June 22, 1983. The Court then dismissed that case "subject to motion by either party to reopen within 30 days following the issuance of the arbitrator's award." *Id.* The arbitrator entered an Award of Arbitration on April 23, 1984 which was generally in favor of the Fund, and on May 23, 1984, the Fund filed a motion to modify in part and enforce the arbitration award.[*] On the same date, Allied filed a Notice of Civil Filing noting that it had filed Civil Action No. 84–1609. In that case, Allied sought a declaratory judgment that the MPPAA unconstitutionally deprived employers who withdrew from multiemployer pension plans prior to September 26, 1980, the date of its enactment, of their right to due process of law under the Fifth Amendment to the Constitution of the United States insofar as the MPPAA authorized the "withdrawal liability" to be imposed retroactively. In the alternative,

---

[*] So much of the motion as requested modification is not relevant to the consideration of the pending motions.

Allied asked the Court to vacate the April 23, 1984 arbitration award. The two cases were eventually consolidated.

The cases are now before the Court on cross motions for summary judgment filed in Civil Action No. 82–1624.

I

When Congress enacted the MPPAA, which was signed by the President on September 26, 1980, it provided that the effective date of the withdrawal liability provision for the multiemployer pension plan was April 29, 1980. Thus, even though Allied withdrew from the Fund's plan on May 8, 1980, it was still liable under the MPPAA provided that the retroactive provision of that act was constitutional. Allied argued in this case that the provisions of the MPPAA were unconstitutional. However, this Court was not required to address that issue because on June 18, 1984, the Supreme Court put that issue to rest in upholding the constitutionality of the retroactive provisions of the act. *Pension Benefit Guaranty Corp. v. R.A. Gray*, —— U.S. ——, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). Based upon that decision, the Fund would be entitled to prevail on the major issues in these cases. The Supreme Court was not to have the last word, however, because Congress enacted, and the President signed on July 18, 1984, the Tax Reform Act of 1984 (1984 Act) which included a provision "eliminating" the retroactive application of the MPPAA. Pub.L. No. 98–369, § 558, 98 Stat. 494, 899 (1984). Section 558 of the 1984 Act provides in part:

(a) In General.—

(1) Liability.—Any withdrawal liability incurred by an employer pursuant to part 1 of subtitle E of title IV of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1381 et seq.) as a result of the complete or partial withdrawal of such employer from a multiemployer plan before September 26, 1980, shall be void.

(2) Refunds.—Any amounts paid by an employer to a plan sponsor as a result of such withdrawal liability shall be refunded by the plan sponsor to the employer with interest (in accordance with section 401(a)(2)), less a reasonable amount for administrative expenses incurred by the plan sponsor (other than legal expenses incurred with respect to the plan) in calculating, assessing, and refunding such amounts.

The effect of the 1984 Act is to moot the decision in *Gray*.

Allied argues that the 1984 Act forecloses any further consideration of the claims made by the Fund in these cases. Allied requests the Court to order the Fund to return the $85,708 paid by Allied to the Fund pursuant to the now eliminated provisions of the MPPAA. The Fund argues that Section 558 of the 1984 Act is unconstitutional.

II

"It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976) (citations omitted). *See also Gray*, 104 S.Ct. at 2717–18. In *Turner Elkhorn*, the Supreme Court noted that the legislation under consideration in that case had some retrospective application but observed that "our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." 428 U.S. at 16, 96 S.Ct. at 2893.

The Supreme Court in *Gray* reaffirmed the above ruling and noted that the "strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively" provided "the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclu-

sive province of the legislative and executive branches." 104 S.Ct. at 2718. Employers, anticipating the enactment of the MPPAA, thought they could escape a withdrawal liability by withdrawing from plans before the enactment of the act, however, the retroactive application of the legislation prevented many employers from accomplishing that goal. The Supreme Court found that it was "emminently rational for Congress to conclude that the purposes of the MPPAA could be more fully effectuated if its withdrawal liability provisions were applied retroactively." *Gray*, 104 S.Ct. at 2718. The Court noted that Congress was "properly concerned that employers would have an even greater incentive to withdraw if they knew that legislation to impose more burdensome liability on withdrawing employers was being considered." *Id.* Congress made the MPPAA retroactive to prevent employers from taking advantage of the "lengthy legislative process and withdrawing while Congress debated necessary revisions in the statute." 104 S.Ct. at 2719. Finally, as the legislation "progressed through the legislative process, Congress advanced the effective date chosen so that it would encompass only that retroactive time period that Congress believed would be necessary to accomplish its purpose." *Id.*

Congress, the Court found, had "legitimate legislative purposes furthered by a rational means" in making some provisions of the MPPAA retroactive; thus its action was constitutional.

Ironically, the Fund, which supported the argument ultimately adopted by the Supreme Court in *Gray,* now finds itself in the opposite corner. It contends that the facts in *Gray* are distinguishable from those here because, while Congress gave "in depth" consideration to the reasons for making the MPPAA retroactive, it has failed to undertake a similar consideration in "eliminating" those retroactive provisions in its enactment of the 1984 Act.

To be sure, it does appear that Congress did not give "in depth" consideration to Section 558 of the 1984 Act; but, the Su-preme Court did not specify the quantum of the study which must be undertaken. The Court merely observed that the retroactive application of the statute must be supported by a "legitimate legislative purpose furthered by a rational means." 104 S.Ct. at 2718. Indeed, the court in *Gray* observed that "[w]e have doubts, however, that the retroactive application of the MPPAA would be invalid under the Due Process Clause for lack of notice even if it was *suddenly enacted by Congress without any period of deliberate consideration, as often occurs with floor amendments or 'riders' added at the last minute to pending legislation."* 104 S.Ct. at 2719 (emphasis this Court's). Those comments in *Gray* seem to have anticipated the very issue before this Court.

Here, Section 558 was not merely added to the 1984 Act by amendment on the floor. It was considered by a committee of the Senate. *See* Senate Committee on Finance, 98th Cong., 2d Sess., Deficit Reduction Act of 1984: Explanation of Provisions Approved by the Committee on March 21, 1984 at 337. The matter was also debated on the House floor by Congressman William L. Clay, Chairman of the House Subcommittee on Labor-Management Relations. *See* 130 Cong.Rec.H 7091–94 (daily ed. June 27, 1984).

The Court concludes that the challenged provisions of the 1984 Act, § 558, pass constitutional muster. Clearly, Congress had a legitimate legislative purpose, namely, to reverse its earlier action making the MPPAA retroactive which it has now determined was unnecessary. Moreover, the method undertaken to accomplish that goal is rational. While there may be those who would quarrel with the wisdom of Congress in taking such action, "judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." *Gray,* 104 S.Ct. at 2718. The decision to eliminate the retroactive provisions of the MPPAA seem little more than a congressional reconsideration of an action already upheld by the Supreme Court.

Finally, the Court observes that from the time of its enactment, the MPPAA has been under attack. The constitutionality of those sections which would have retroactive application were upheld only 30 days before the enactment of the 1984 Act which effectively withdrew the retroactive provisions. Thus, it is unlikely that either party has been misled or suffered severe disadvantage. Everyone involved knew of the pending legislation and the pending decision by the Supreme Court.

In sum, this Court concludes that Section 558 of the 1984 Act is constitutional. Having so decided, it follows that Allied's motion for summary judgment must be granted and the Fund's motion for summary judgment must be denied.

An appropriate Order has issued.